**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **GREGORY DOUGLAS STONE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil No. 4:22-cv-789-ALM-KPJ** |
| | § | |
| **FINRA and ROBERT W. COOK,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Financial Industry Regulatory Authority's ("FINRA") and Robert W. Cook's ("Cook," and together with FINRA, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (the "Amended Motion to Dismiss") (Dkt. 32). Plaintiff Gregory Douglas Stone ("Plaintiff") filed a response (Dkt. 34), Defendants filed a reply (Dkt. 35), and Plaintiff filed a sur-reply (Dkt. 37). For the reasons that follow, the Court recommends the Amended Motion to Dismiss (Dkt. 32) be **GRANTED**.

## I.    BACKGROUND

On September 13, 2022, Plaintiff, proceeding *pro se*, filed the original complaint. *See* Dkt 1. On October 6, 2022, the parties filed a first joint motion to extend deadlines (Dkt. 14), wherein the parties requested an extended briefing schedule for Defendants' proposed Rule 12(b)(6) Motion to Dismiss, which the Court granted on December 9, 2022. *See* Dkt. 15. On October 25, 2022, Defendants filed their first motion to dismiss (Dkt. 17), and Plaintiff filed a response (Dkt. 20) on November 29, 2022. On December 5, 2022, the parties filed a second joint motion to extend deadlines (Dkt. 22), wherein the parties represented that Plaintiff sought to file an amended

complaint and the parties requested an extended briefing schedule, which the Court granted on

December 9, 2022. *See* Dkt. 24.

On January 6, 2023, Plaintiff filed the amended complaint (the "Amended Complaint")

(Dkt. 27). Plaintiff alleges FINRA, under the leadership of Cook, "issued a confidential [d]irective,

effective October 4, 2021, titled 'Vaccination Requirement for In-Person Participants.'" *Id.* at 10.[1]

The FINRA directive (the "In-Person Hearing Policy") (Dkt. 27-1) in relevant part is as follows:

> Effective October 4, 2021 through July 1, 2022* all in-person participants, including arbitrators, mediators, counsel, parties, paralegals, witnesses, and others, must be fully vaccinated** to attend FINRA Dispute Resolution Services arbitration hearings or mediation sessions (hearing).
>
> - From October 4, 2021 through November 19, 2021, in-person attendees may, in lieu of being fully vaccinated, provide proof of a negative PGR test within 72 hours of the start of the hearing and every 72 hours during the course of the hearing.
>
> - After November 19, 2021, in-person participants who attest that there are circumstances that prevent them from being vaccinated can provide proof of a negative PGR test within 72 hours of the start of the hearing, and every 72 hours during the course of the hearing. All costs associated with COVID testing are the responsibility of the parties or individuals that incurred them.

*Id.* at 2.

Plaintiff alleges the directive "circumvented valid rulemaking procedures" and "appears to

have been imposed upon FINRA by its oversight agency, the Securities and Exchange Commission

(SEC)." Dkt. 27 at 11. Plaintiff alleges FINRA "provided Plaintiff with no evidence of meaningful

due diligence or deliberation regarding vaccine efficacy," and Plaintiff asserts he "knew that the

number of COVID injection deaths reported to the CDC's Vaccine Adverse Event Reporting

System (VAERS) was greater than the *combined* death toll from all vaccines over the previous

thirty years." *Id.* (emphasis in original). Plaintiff alleges FINRA "was coercing [Plaintiff] into

risking bodily harm, even death, if he wished to continue his arbitration career" and "expected

---

[1] For all citations, the Court refers to CM/ECF pagination rather than internal pagination.

[Plaintiff], as chairperson, to enforce [its] vaccine policy on arbitration participants." *Id.* Plaintiff alleges he executed an "Oath of Arbitrator for each case that he was arbitrating that required he disclose his concerns to his clients" and "[i]n keeping with his sworn arbitral duty, [Plaintiff] drafted a disclosure statement." *Id.* at 12. Plaintiff asserts his "disclosure statements included an important provision: he would continue to arbitrate his clients' disputes on a remote hearing basis until his (and their) concerns regarding in-person hearings were addressed." *Id.* Plaintiff's disclosure statement (Dkt. 27-2), in part, states the following:

> Yesterday, I received notice of this newest regulation for in-person hearings. In summary, the new regulation, which takes effect on October 4, 2021, requires all participants[,] parties, attorneys, and arbitrators to be Covid vaccinated or submit to regular Covid testing at their own expense. As Chairperson, I am not comfortable enforcing or endorsing, recommending or advocating the new regulation. For the following reasons, I'm unable to administer the new regulation: 1) I have reason to believe the regulation violates the law. 2) Should I, as an independent arbitrator, enforce or even endorse an illegal regulation, I believe I accrue liability, a risk that I'm unwilling to assume. 3) I have not asked for and FINRA has not offered a waiver of liability. As far as I know, I'm not indemnified from prosecution for illegal actions I might take as an arbitrator.

Dkt. 27-2 at 1.

Plaintiff asserts he "uploaded his disclosure statement (addressed to his clients) to the FINRA Dispute Resolution Portal, a technology case management tool . . . Once participants learned of vaccine safety risks and lack of efficacy, they may have chosen to forego the in-person option and continue with [Plaintiff] as Chairperson in a remote hearing format." Dkt. 27 at 12. Plaintiff alleges "[i]n this instance, Plaintiff's disclosures were blocked," and "FINRA interfered with [Plaintiff's] ongoing arbitrations by censoring his required disclosures." *Id.*

Plaintiff alleges that "[a] short time later, FINRA communicated their intention to inform [Plaintiff's] clients that he had 'withdrawn,' which was false . . . ." *Id.* at 13. Plaintiff alleges "[t]his demonstrated FINRA's intent to issue false statements." *Id.* Plaintiff asserts he "objected and asked

FINRA to post his submitted disclosure," but "[it] refused." *Id.* Plaintiff alleges FINRA "followed with an email indicating it would be futile for [Plaintiff] to address the issue further—he had been removed from all his cases (with no reason provided)." *Id.* Plaintiff asserts FINRA did not provide Plaintiff an option to continue as an arbitrator on a remote basis. *See id.* Plaintiff further alleges "FINRA strayed beyond [its] authority with a vaccine policy" and "owed Plaintiff a duty of conscientious due diligence." *Id.* at 14. Plaintiff asserts "Defendants failed to provide [Plaintiff] with information consistent with Plaintiff's right of informed consent." *Id.* at 15. Plaintiff asserts that "FINRA's motivation for censoring [Plaintiff], can be explained by the numerous federal agencies engaged in a massive, sprawling federal censorship enterprise . . . Federal agencies utilized private actors as proxies to carry out their censorship designs." *Id.* at 16. Plaintiff asserts that "FINRA's path from private actor to federal proxy was a short one. Though courts have often designated FINRA a private actor, it creates its regulations in close collaboration with the SEC." *Id.* at 16. Plaintiff alleges, "FINRA actively foreclosed any procedural path for [Plaintiff] to contest the [d]irective, the censorship, the inference with professional relationships, the removal of his cases, and the denial of informed consent." *Id.* at 17.

Plaintiff asserts the following causes of action: tortious interference with existing business relationships based on Plaintiff's removal from arbitrations, *see id.* at 17–19; tortious interference with prospective business relationships because of the damage to Plaintiff's reputation, *see id.* at 19–20; defamation on the basis of damage to Plaintiff's reputation and making it "appear he was unfit to arbitrate," *id.* at 20; "Breach of Duty," negligent misrepresentation, and omission of material facts for alleged failure to disclose safety risks, *see id.* at 20–23; fraud on the basis of FINRA fraudulently inducing in-person participants to take the vaccine and fraudulently concealing the alleged dangers of the vaccine, *see id.* at 23–28; "Violation of Informed Consent

Rights; Common Law, Constitutional, & Statutory Violations" on the basis of the "Universal Declaration of Human Rights," informed consent doctrine, the Food, Drug, and Cosmetics Act's 21 U.S.C. § 360bbb-3, the common law, and *Bivens*, *see id.* at 29–41; and violations of the Fifth Amendment's Due Process Clause, *see id.* at 41–44. Plaintiff requests compensatory damages in the amount of $58,000 for lost revenue during the years of 2021 and 2022 and $87,000 in compensation for lost business opportunities in 2023, 2024, and 2025. *See id.* at 44–45. Plaintiff further requests punitive damages as follows:

> FINRA violated common law, constitutional protections, statutory law and principles of human decency. They committed fraudulent inducement and fraudulent concealment. They showed reckless disregard for human life and lack of due diligence, when they attempted to coerce Plaintiff into an experimental clinical trial that presented significant risk of injury and death. They attempted to coerce Stone into fraudulently concealing safety risks from his clients and exacted a penalty for noncompliance: the loss of his arbitration career and reputation. FINRA violated Plaintiff's right to informed consent and his right to Fifth Amendment due process under the law. The United States military placed Nazi doctors on trial for human subject experimentation in trials that inspired international treaties and law making it illegal to coerce human subjects into medical trials. In light of this history, FINRA's dystopian conduct shocks the conscience.

*Id.* at 45.

Plaintiff filed the following documents in support of the Amended Complaint (Dkt. 27): an email from drportal@finra.org to Plaintiff dated September 23, 2021, titled "Vaccination Requirement for In-Person Participants" outlining vaccination requirements for FINRA Dispute Resolution Services arbitration hearings, *see* Dkt. 27-1; Plaintiff's drafted disclosure statement titled "Update and Disclosure Memorandum from the Chairperson," outlining Plaintiff's concerns regarding vaccination requirements, *see* Dkt. 27-2; email correspondence between FINRA employees Laura McNamire, Nora Sassounian, and Jason Cruz and Plaintiff dated September 28 through September 30, 2021, *see* Dkt. 27-3 at 1–8; FINRA notice to Plaintiff from FINRA employee Nora Sassounian dated September 28, 2021, stating, "We are in receipt of your notice

advising that you have withdrawn from the above-captioned matter," *id.* at 9; and Plaintiff's letter to Cook dated October 18, 2021, *see* Dkt. 27-4.

On January 25, 2023, the parties filed the Joint Motion to Stay Initial Discovery Deadlines (Dkt. 30) pending a ruling on Defendants' proposed motion to dismiss, which the Court granted on January 26, 2023. *See* Dkt. 31.

On February 2, 2023, Defendants filed the Amended Motion to Dismiss (Dkt. 32). In the Amended Motion to Dismiss (Dkt. 32), Defendants argue Plaintiff's claims are barred "by the doctrine of arbitral immunity" because Plaintiff "was unwilling to enforce the In-Person Hearing Policy, [which is] a textbook example of a task that is integral to the administration of the arbitration forum." *Id.* at 18–19. Defendants further argue Plaintiff has failed to state a claim for tortious interference because FINRA did not interfere with a valid contract, nor did Defendants tortiously interfere with prospective business relationships. *See id.* at 21–22. Defendants argue Plaintiff fails to state a claim for defamation because Plaintiff fails to allege that any statement made by FINRA was defamatory, published, false, or capable of defamation. *See id.* at 23–28. Defendants argue Plaintiff fails to state claims for negligent misrepresentation and fraud because Plaintiff cannot allege that he relied on any misrepresentation or omission, Plaintiff does not allege that FINRA made any representation regarding the COVID-19 vaccine's safety or efficacy, and there is no confidential or fiduciary relationship between FINRA or Plaintiff. *See id.* at 28–33. Defendants further argue there is no private right of action to enforce the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et. seq.*, and there is no implied private right of action to enforce the Fifth Amendment's Due Process clause against FINRA because FINRA is not a federal entity and its executives are not federal officers nor is there a *Bivens* remedy to redress Plaintiff's alleged Fifth Amendment violation. *See* Dkt. 32 at 33–36. Defendants also argue that Plaintiff does not

assert a viable common law claim because informed medical consent under Texas common law applies only to healthcare providers, and Plaintiff does not identify a federal common law cause of action for such a claim. *See id.* at 36–37. Defendants finally argue Plaintiff lacks standing to assert claims on behalf of every FINRA arbitration participant and Plaintiff's claims against new, unnamed FINRA executives are both improper and time-barred. *See id.* at 37–39.

In support of the Amended Motion to Dismiss (Dkt. 32), Defendants include the following: Declaration of Ethan Dettmer, Defendants' counsel, *see* Dkt. 32-1; Plaintiff's application to join FINRA's roster of arbitrators, *see* Dkt. 32-2; FINRA's "Oath of Arbitrator," *see* Dkt. 32-3; JAMS's Health and Policy Requirements for JAMS Resolution Centers, *see* Dkt. 32-4; Southern District of Texas' COVID-19 vaccination policy, s*ee* Dkt. 32-5; the United Court of Appeals for the Fourth Circuit Powell Courthouse Entry and Oral Argument Protocol, *see* Dkt. 32-6; United States Court of Appeals for the Seventh Circuit's Order Regarding Masking, Vaccination, and COVID-19 Self-Certification, *see* Dkt. 32-7; United State Court of Appeals for the Tenth Circuit Byron White United States Courthouse Reopening Protocol, *see* Dkt. 32-8; United States Court of Appeals for the Eleventh Circuit's Supplemental Requirements to Enter Court Facilities, *see* Dkt. 32-9; the U.S. Supreme Court's December 10, 2021 announcement concerning the January and February 2022 oral argument sessions, *see* Dkt. 32-10; FINRA's Code of Arbitration Procedure for Customer Disputes, *see* Dkt. 32-11; and FINRA's Code of Arbitration Procedure for Industry Disputes, *see* Dkt. 32-12.[2]

On February 17, 2023, Plaintiff filed a response (Dkt. 34) to the Amended Motion to Dismiss (Dkt. 32), wherein Plaintiff argues Defendants' claim of arbitral immunity fails because

---

[2] The Court granted Defendants' "Unopposed Request of Defendants Financial Industry Regulatory Authority and Robert W. Cook For Judicial Notice In Support of Motion to Dismiss Plaintiff Gregory Stone's Amended Complaint" (Dkt. 33) and took judicial notice of the attached exhibits (Dkts. 32-4–32-12) in considering the Amended Motion to Dismiss (Dkt. 32). *See* Dkt. 39 at 2.

the present case involves "no disgruntled arbitration litigants, no contested arbitral awards or decisions, and no administrative support for arbitral decision-making." *Id.* at 17. Plaintiff further argues FINRA executives are liable because they exceeded their mandates and their vaccine policy "was dictated by a federal agency, the SEC." *Id.* at 19. Plaintiff further argues FINRA interfered with valid contracts because the Oath of Arbitrator is a contract as to each specific case, and there is an offer and acceptance process. *See id.* at 20–22. Plaintiff asserts that "FINRA removed [Plaintiff] from his cases with malice, damaging his reputation as a *reliable*, *dependable* arbitrator/chairperson." *Id.* at 22 (emphasis in original). Plaintiff argues the defamatory act was "FINRA's removal of [Plaintiff]s cases and the published notice of that removal" as "[a] 'removal' signals, albeit mysteriously, that something was amiss with the arbitrator's performance" and "absent an exculpatory explanation, is inherently defamatory." *Id.* at 23–24. Plaintiff further argues his negligent misrepresentation and fraud claims are properly pleaded because FINRA failed to disclose facts regarding vaccine efficacy, FINRA was in a fiduciary relationship with Plaintiff, and in turn, Plaintiff was injured by the loss of arbitration assignments. *See id.* at 27–29. Plaintiff further argues he has a right to bring federal and common law claims due to "special circumstances" such as the failure of federal agencies to act. *Id.* at 33. Plaintiff asserts there is an implied right of action under the Fifth Amendment's Due Process Clause "in light of recently revealed federal schemes designed to crush individual civil rights." *Id.* at 36. Plaintiff further contends he does not assert claims on behalf of every FINRA arbitration participant, and he agrees to strike the fictitious names "Jane and John Does 1-8" from the Amended Complaint (Dkt. 27). *See* Dkt. 34 at 38–39.

On February 24, 2023, Defendants filed a reply (Dkt. 35), wherein they argue: Defendants are entitled to arbitral immunity because the vaccination rules were integrally related to the

arbitration, *see id.* at 6–8; FINRA did not interfere with a valid contract or prospective business relationship because it is FINRA that has the final say over which arbitrators will hear any given dispute and, even if there were a contract, it would be FINRA that would be a party to the contract, and Plaintiff does not point to specific business relationships but rather only speculates as to such relationships, *see id.* at 8–10; FINRA did not publish a false statement that harmed Plaintiff because acts cannot be defamatory—only statements can be defamatory, and the statement that Plaintiff was removed is substantively true, *see id.* at 10–12; FINRA did not make any representation which Plaintiff relied upon, FINRA did not make any representation about the safety or efficacy of the COVID-19 vaccine, and FINRA is not in a fiduciary relationship with Plaintiff or forum participants, *see id.* at 12–14; and Plaintiff fails to state a viable federal or common law cause of action because the Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3, does not permit private claims, and FINRA is not a federal agency, *see id.* at 14–15. Defendants also note that Plaintiff conceded he does not have standing to assert claims on behalf of arbitral participants, and Plaintiff abandoned his claims against the new unnamed FINRA executives. *See id.* at 15.

On March 3, 2023, Plaintiff filed a sur-reply (Dkt. 37), wherein he argues: FINRA is not entitled to arbitral immunity, *see id.* at 7–8; FINRA tortiously interfered with a valid contract, *see id.* at 9–10; Plaintiff was forced to rely on misrepresentations, and FINRA has a fiduciary relationship as it is an organization "seeking public trust," *id.* at 11; FINRA's defamation defense "should be evaluated in the context of widespread censorship and defamation that targeted anyone who dared question the 'safe and effective' narrative," *id.*; Defendants assumed the role of federal actors "when they required [Plaintiff] be injected with an experimental gene therapy," *id.* at 13; and Plaintiff informed Cook of his injuries, *see id.* at 14.

## II.     LEGAL STANDARD

### A. Federal Rules of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "'not bound to accept as true a legal conclusion couched as a factual allegation'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, (1986)).

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), as revised (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir.), *cert. denied*, 143 S. Ct. 109 (2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

**B. Federal Rules of Civil Procedure 9(b)**

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "The particularity demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067–68 (5th Cir. 1994) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)). The Fifth Circuit has explained that Rule 9(b) requires "[a]t a minimum . . . that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted); *see also Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)) (observing that Rule 9(b) requires a plaintiff allege "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'") (internal quotations omitted).

The "particularity demanded by Rule 9(b) is supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570 (2007)) (alteration in original). Rule 9(b)'s particularity requirement supplements Rule 8(a), which "prohibits any claims that are merely conceivable rather than plausible." *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) (per curiam) (citing *Iqbal*, 556 U.S. at 680). A claim is

"merely conceivable and not plausible if the facts pleaded are consistent with both the claimed misconduct and a legal and obvious alternative explanation." *Id.* (internal citation omitted).

## III.   ANALYSIS

Defendants argue they are entitled to arbitral immunity in relation to Plaintiff's claims and, in the alternative, Plaintiff has failed to state a claim. *See* Dkts. 32, 35. Plaintiff argues Defendants are not entitled to arbitral immunity, and Plaintiff has set forth the requisite elements for each of his causes of action.[3] *See* Dkts. 34, 37. For the reasons that follow, the Court finds Plaintiff has failed to state a claim.[4]

---

[3] Plaintiff included eight unnamed FINRA executives as Defendants in the Amended Complaint. *See* Dkt. 27 at 1. Defendants argue this was a violation of the Court's order to not use fictitious names, and the Court should dismiss Plaintiff's claims against the new unnamed Defendants. *See* Dkt. 32 at 39. In his response to the Amended Motion to Dismiss, Plaintiff agreed "to strike fictitious names 'Jane and John Does 1–8.'" *See* Dkt. 34 at 39. Additionally, Plaintiff concedes he is not asserting claims on behalf of arbitral participants, as his "claims are personal, individual, distinct and solely on his behalf." *Id.* at 38. Accordingly, as Plaintiff has made clear he does not wish to assert such claims, the Court does not consider Plaintiff's claims against the eight unnamed FINRA executives or any claim Plaintiff seeks to assert on behalf of arbitration participants.

[4] "The resemblance of an arbitrator's role to that of a judge gives rise to immunity from suit similar to judicial immunity" and the "scope of arbitral immunity does not exceed the bounds of judicial immunity." *Hudnall v. Smith*, No. EP-21-CV-00106-FM, 2021 WL 3744580, at *2 (W.D. Tex. Aug. 10, 2021), *appeal dismissed*, 2021 WL 7084930 (5th Cir. Dec. 23, 2021) (citing *E.C. Ernst, Inc. v. Manhattan Const. Co. of Tex.*, 551 F.2d 1026, 1033 (5th Cir. 1977)). "Arbitral immunity 'is essential to protect decision-makers from undue influence and the process from reprisals by dissatisfied litigants'" and provides immunity to arbitrators from civil liability. *Jason v. Am. Arb. Ass'n, Inc.*, 62 F. App'x 557, 2003 WL 1202934, at *1 (5th Cir. 2003) (per curiam) (quoting *New England Cleaning Serv., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999)). Arbitral immunity extends to organizations that sponsor arbitrations, "as well with regard to the tasks that they perform that are integrally related to the arbitration." *Id.* (citing *New England Cleaning Serv., Inc.*, 199 F.3d at 545).

Defendants argue that "FINRA's decision to remove [Plaintiff] from pending arbitration matters after he told FINRA he was unwilling to enforce the In-Person Hearing Policy presents a textbook example of a task that is integral to the administration of the arbitration forum" and, "[a]ccordingly, FINRA is immune from suit and liability for that decision." Dkt. 32 at 19 (citing *New England Cleaning Servs., Inc.*, 199 F.3d at 545; *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 844 (7th Cir. 2002); *Landmark Ventures, Inc. v. Cohen*, No. 13 CIV. 9044 JGK, 2014 WL 6784397, at *4 (S.D.N.Y. Nov. 26, 2014); *Olson v. Nat'l Assoc. of Secs. Dealers* , 85 F.3d 381, 383 (8th Cir. 1996)). Defendants are correct that arbitral immunity protects the arbitral forum for decisions related to the appointment of arbitrators, but none of Defendants' cited cases address claims in relation to an *arbitrator's* claims against the forum. *See New England Cleaning Servs., Inc.*, 199 F.3d at 545 (holding arbitral forum was entitled to immunity as to arbitration participant's claims related to arbitration process); *Int'l Med. Grp., Inc.*, 312 F.3d at 843 (same); *Olson*, 85 F.3d at 382 (same); *Landmark Ventures, Inc.*, 2014 WL 6784397, at *4 (same). And it appears that the extension of arbitral immunity to an arbitrator's claims against the forum would diverge from the purpose of arbitral immunity, i.e., "to protect decision-makers from undue influence and the process from reprisals by *dissatisfied litigants*." *Jason*, 62 F. App'x at 557 (quotation omitted) (emphasis added). Arbitral immunity's extension to the arbitral forum arises

## A. Tortious Interference with Contract and Tortious Interference with Prospective Business Relationships

"Texas law recognizes two types of tortious-interference claims: one based on interference with an existing contract and one based on interference with a prospective business relationship." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs.*, *Inc.*, 29 S.W.3d 74, 78 (Tex. 2000)). For the following reasons, Plaintiff fails to state a claim for both tortious interference with contract and tortious interference with prospective business relationships.

### 1. Tortious Interference with Contract

"A claim for tortious interference with a contract consists of four elements: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017) (citing *ACS Invs.s, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). Accordingly, "[t]ortious interference with contract requires a breach of contract." *Adidas Am. Inc. v. Shoebacca Ltd.*, No. 3:20-CV-03248-N, 2021 WL 4399745, at *2 (N.D. Tex. Sept. 27, 2021) (citing *El Paso Healthcare Sys., Ltd.*, 518 S.W.3d at 421–22). Defendants argue the "Oath of Arbitrator" does not constitute a valid contract between Plaintiff and arbitration participants because arbitration participants are not Plaintiff's clients. *See* Dkt. 32 at 21; Dkt. 35 at 8–10. Moreover, Defendants assert that even if the "Oath of Arbitrator" was a contract, the parties would be the arbitration participants and FINRA—not Plaintiff. *See id.*

---

from the arbitrator's entitlement to immunity and, thus, it is unclear how the forum would be entitled to such immunity in its relationship with the arbitrator. *See Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) ("Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusory. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association."). Rather, as clarified in the analysis below, Defendants' arguments are better suited for analysis under the rubric of whether Plaintiff has failed to state a claim.

Plaintiff asserts the "Oath of Arbitrator" is a valid contract because "'offer and acceptance' process forms a contractual relationship." Dkt. 34 at 21; *see also* Dkt. 37 at 9.

Plaintiff has not plausibly alleged that Defendants have breached a contract and, therefore, there can be no tortious interference of a contract because Plaintiff is not in a contractual relationship with the arbitration participants. Rather, Plaintiff is maintained on a list of arbitrators from FINRA's roster of arbitrators that may be removed by FINRA's Director under the Director's discretionary authority and is paid an honorarium fee by FINRA. *See* Dkt. 32-3 (Oath of Arbitrator); Dkt. 32-11 (FINRA's Code of Arbitration Procedure for Customer Disputes); Dkt. 32-12 (FINRA's Code of Arbitration Procedure for Industry Disputes). Plaintiff does not allege any contractual relationship other than the "Oath of Arbitrator," which outlines relevant disclosures for the arbitration participants and does not provide arbitration participants the "power of acceptance" necessary to create a binding contract.[5] *See Angel, Tr. for Gobsmack Gift Tr. v. Tauch*, 642 S.W.3d 481, 488 (Tex. 2022), *reh'g denied* (Apr. 22, 2022) ("But acceptance creates a binding contract only if the power of acceptance remains in the offeree.") (citations omitted); *see also McNair v. Burt*, 68 F.2d 814, 816 (5th Cir. 1934) (holding the oath of office for bank directors was not a contract but rather a "statutory oath . . . exact[ing] a solemn pledge [that] also serves as documentary proof . . . but does not itself evidence or disclose any contract, obligation, or liability, which is made the foundation for a civil action"). As such, Plaintiff cannot plausibly allege there was an existing contract on the basis of the "Oath of Arbitrator" between himself and the arbitration

---

[5] The necessary consideration is also lacking between arbitration participants and Plaintiff—Plaintiff receives payment from FINRA—not the participants. *See* Dkts. 32-11, 32-12. Furthermore, Defendants argue that even if there was a contract, Plaintiff would not be a party to the contract, as the agreement would be between FINRA and the arbitration participant. *See* Dkt. 35 at 9–10. While there does not appear to be any contract (or at least the Oath of Arbitrator does not create such a contract), if there is a contract that Plaintiff asserts was interfered with by FINRA and its own arbitration participants, such a claim fails because "'a person must be a stranger to a contract to tortiously interfere with it.'" *Loco Brands, LLC v. Butler Am., LLC*, No. 6:18-CV-69-JDK-KNM, 2020 WL 809284, at *6 (E.D. Tex. Jan. 30, 2020), *R. & R. adopted*, 2020 WL 805570 (E.D. Tex. Feb. 18, 2020) (quoting *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006)).

participants that was allegedly interfered with by FINRA.

Therefore, Plaintiff fails to plead a claim for tortious interference with contract.

2. *Tortious Interference with Prospective Business Relationships*

"To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted).

Defendant argues Plaintiff fails to state a claim for tortious interference with prospective business relationships because Plaintiff fails to allege the existence of a probable contract and does not allege any underlying independently tortious conduct. *See* Dkt. 32 at 23; Dkt. 35 at 10. Plaintiff responds that his prospects of future business relationships were interfered with, as his reputation was harmed. *See* Dkt. 34 at 22; Dkt. 37 at 10.

Plaintiff fails to sufficiently plead the "reasonable probability" element, as Plaintiff does not "describe the specifics of a proposed agreement that never came to fruition." *Pureshield, Inc. v. Allied Bioscience, Inc.*, No. 4:20-CV-734-SDJ, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021) (quoting *Corrosion Prevention Techs. LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020)) (internal quotations omitted). Plaintiff generally alleges that his removal from certain FINRA arbitrations has damaged his reputation, and in turn, his removal has damaged his prospects for future selection as an arbitrator. *See* Dkt. 27 at 19–20. Courts have

found vague assertions that future business relationships would possibly or potentially be harmed to be insufficient to plead a tortious interference with business relationships claim. *Compare Pureshield, Inc.*, 2021 WL 4492861, at *4 (collecting cases) ("No other allegations in the [c]omplaint point to a specific business relationship that failed to come to fruition. [The plaintiff] is left with the vague contention that it may have entered into a business relationship with unnamed 'customers or business partners.' By any measure, this is insufficient to meet the reasonable probability element."); *and I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 3086035, at *3 (N.D. Tex. July 20, 2017) (finding the plaintiff failed to plead tortious interference with prospective business relationships claims because the plaintiff "merely points to 'unspecified individuals' and some unspecified business relationship" in relation to allegedly disparaging comments made on a conference call), *with Cooper v. Harvey*, 108 F. Supp. 3d 463, 472 (N.D. Tex. 2015) (finding the plaintiff sufficiently alleged the reasonable probability element, as the plaintiff alleged a specific licensing and distribution agreement with a third party was interfered with by his attorney). In the present case, Plaintiff does not point to any future contract to arbitrate that was interfered with by FINRA acting as a third party. Thus, Plaintiff's allegation that his reputation was damaged, which may lead to possibly fewer selections as an arbitrator, is insufficient to plead the reasonable probability element.

Additionally, as discussed below, Plaintiff fails to allege an independently tortious or unlawful act, as Plaintiff fails to plead defamation (or any other tort). *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC,* No. 3:16-CV-3310-B, 2017 WL 2729998, at *11 (N.D. Tex. June 26, 2017); *ProTradeNet, LLC v. Predictive Profiles, Inc.*, 369 F. Supp. 3d 788, 795 (W.D. Tex. 2019) ("At most, these are allegations of unfair or sharp conduct, and do not rise to the level of independently tortious conduct. Therefore, because [the plaintiff]

fails to allege independently tortious conduct, it fails to plead a plausible claim.").

Accordingly, Plaintiff fails to state a claim for tortious interference with prospective business relationships.

### B.  Defamation

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). To allege a claim for defamation, a plaintiff must allege "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Smith v. Wal-Mart Stores, Inc.*, 980 F.3d 1060, 1062 (5th Cir. 2020) (citing *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)). Texas recognizes the common-law rule that defamation is either *per se* or *per quod*. *See Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (citing *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015)). Defamation *per se* "involve[s] statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013). Defamation *per quod* includes any defamatory statement that is not defamation *per se*. *Dall. Morning News, Inc.*, 554 S.W.3d at 624.

Defendants argue Plaintiff fails to plead defamation because Plaintiff does not allege a defamatory statement was made, that the statement was published to a third party, and that "withdrawal" would create a defamatory impression. Dkt. 32 at 23–28; Dkt. 35 at 10–12. Plaintiff responds that FINRA's removal of Plaintiff from cases and a published notice of such removal,

"absent an exculpatory notice, is inherently defamatory" because "[t]he information vacuum created by FINRA led to the false impression that [Plaintiff] committed an infraction that caused FINRA to take action." Dkt. 34 at 23. Plaintiff further argues that "FINRA's removal of [Plaintiff's] cases was the equivalent of marching him out the door in handcuffs." Dkt. 37 at 12.

Plaintiff makes clear in his response he is alleging the "defamatory act and statement that occurred was FINRA's removal of [Plaintiff from FINRA] cases and the published notice of that removal" because "[a] 'removal' signals, albeit mysteriously, that something was amiss with the arbitrator's performance." Dkt. 34 at 23. As to the act of removing Plaintiff from FINRA arbitrations, Defendants assert that the act of removal cannot be defamatory because it is not a statement. *See* Dkt. 32 at 24; Dkt. 35 at 11. The Texas Supreme Court has repeatedly discussed defamation in terms of the publication of a *false statement* and, thus, it appears the act of removal cannot support a defamation claim under Texas law. *See Fiber Sys. Int'l, Inc.*, 470 F.3d at 1161; *Dall. Morning News, Inc.*, 554 S.W.3d at 623; *Bedford*, 520 S.W.3d at 904.

However, even if the act of removal combined with the notice of removal did constitute a "statement," Plaintiff still fails to state a defamation claim. The removal and notice of "removal" are not reasonably capable of defamation. "In a defamation case, the threshold question is whether the words used 'are reasonably capable of a defamatory meaning.'" *Dall. Morning News, Inc.*, 554 S.W.3d at 624 (quoting *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)). The inquiry into whether words are reasonably capable of a defamatory meaning is "objective, not subjective." *Id.* (quoting *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004)) (internal quotations omitted). There are two steps in considering whether the words used are reasonably capable of a defamatory meaning: the first is whether Plaintiff's alleged meaning is reasonably capable of arising from the statement and, if so, the Court must then determine if the meaning is

reasonably capable of defaming Plaintiff. *See id.* at 625.

Plaintiff asserts the act of removal and the notice of removal left an "information vacuum" and "led to a false impression that [Plaintiff] committed an infraction that caused FINRA to take action." Dkt. 34 at 23. As such, Plaintiff clarifies he is asserting a defamation-by-implication claim. *See Dall. Morning News, Inc.*, 554 S.W.3d at 627. But Plaintiff's assertions "cannot be reasonably understood as stating" the meaning Plaintiff proposes—i.e., that Plaintiff was unfit to act as an arbitrator for some reason other than his refusal to enforce the In-Person Hearing Policy. *Id.* at 631 (internal quotation omitted). FINRA provided the following explanation for Plaintiff's removal: "as he was unwilling to serve under the current policies of the forum as it relates to FINRA's vaccination policy." Dkt. 27-3 at 6. FINRA's language in the notice of removal does not expound on Plaintiff's honesty, integrity, virtue, reputation, or any characteristic of Plaintiff. *See id.* at 637–38; *Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *6 (N.D. Tex. Aug. 12, 2021) (finding "an objectively reasonable reader" would not draw the defamatory reading that the plaintiff imputed to the statements). Nor is it impugning his fitness as an arbitrator as required to establish defamation *per se*. *See Hancock*, 400 S.W.3d at 71 (holding the statement that the physician "dealt in half-truths" was not defamatory *per se* because it did not assert physician lacked a necessary skill peculiar or unique to his profession).

And while Plaintiff asserts he was censored and FINRA should have allowed him to communicate directly with the arbitration participants, Plaintiff does not provide, nor does there appear to be, any support for his assertion that he has a right to express his own specific statements through FINRA to the arbitration participants that can support a defamation claim. Based on Plaintiff's own pleadings and his attached email chain, Plaintiff was removed from these FINRA arbitrations after he informed FINRA he had objections to the In-Person Hearing Policy, and the

notice of removal stating he was removed is, at a minimum, "substantially true." *See Slaughter-Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 291 (5th Cir. 2004) (holding a doctor's defamation claim based on a clinic's representations to former patients could not succeed because "[e]ven though these statements may not be literally true, they are, at the very least, substantially true, and therefore not defamatory") (citations omitted); *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 565 (S.D. Tex. 2022), *appeal dismissed*, No. 22-20455, 2022 WL 18912180 (5th Cir. Sept. 27, 2022) (holding there was no defamation when the statement was "factually consistent with the sources used, including [the plaintiff] herself"); *cf. Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1026 (S.D. Tex. 2018) (finding false statement that the plaintiff was a "criminal defendant" as opposed to a civil defendant was sufficient to allege defamation).

Additionally, Plaintiff does not plead any actual damages for defamation in the Amended Complaint (Dkt. 27) and, to the extent he is asserting such damages, his allegations regarding selection for possible arbitrations are too speculative to state a claim as discussed above. *See Mason v. Integra Peak Mgmt. Inc.*, 821 F. App'x 382, 383 (5th Cir. 2020) (per curiam) (affirming dismissal of defamation claim where, *inter alia*, the plaintiff had not plausibly alleged damages stemming from the allegedly defamatory statement).

Accordingly, Plaintiff fails to state a claim for defamation against Defendants.

### C.  Fraud and Negligent Misrepresentation

In the Amended Complaint (Dkt. 27), Plaintiff alleges Defendants "implied in-person hearings would be safe from viral transmission and infection, while omitting evidence the vaccines did not stop viral transmission" and "Plaintiff, among others, was the target of deception that falsely implied that the Directive was the product of due diligence and deliberation and met basic standards of safety and efficacy." *Id.* at 21, 23.

20

Defendants argue Plaintiff did not plead actual reliance on any alleged misrepresentation or omission, Plaintiff does not plead that Defendants made any representations about the safety or efficacy of the COVID-19 vaccine or testing, and there is no fiduciary relationship that exists between Plaintiff and Defendants. *See* Dkt. 32 at 28–33; Dkt. 35 at 13–14. Plaintiff responds that Defendants sought to induce Plaintiff's reliance, he was in a fiduciary relationship with FINRA, and FINRA's silence created false assumptions regarding the efficacy and safety of the COVID-19 vaccine. *See* Dkt. 34 at 27–33; Dkt. 37 at 10–11. For the reasons that follow, Plaintiff fails to allege claims for fraud and negligent misrepresentation.

> 1. *Fraud*

Plaintiff does not point to any affirmative statement made by Defendants regarding vaccine safety and efficacy; rather, Plaintiff asserts the In-Person Hearing Policy and FINRA's silence as to the alleged risks of the COVID-19 vaccine fraudulently created false assumptions regarding the COVID-19 vaccine. *See* Dkt. 27 at 23 ("Plaintiff, among others, was the target of deception that falsely implied that the Directive was the product of due diligence and deliberation and met basic standards of safety and efficacy."); Dkt. 37 at 10–11. Plaintiff clarified in the Amended Complaint (Dkt. 27) and sur-reply (Dkt. 37) that he is asserting a fraud by omission claim. Fraud by omission, or fraud by non-disclosure, occurs when a party with a duty to disclose:

> (1) conceals or fails to disclose a material fact within the knowledge of that party; (2) knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 744 (N.D. Tex. 2014) (citing *CDI Corp. v. GT Solar Inc.*, No. H–11–3487, 2013 WL 873785, at *2 (S.D. Tex. Mar. 7, 2013)); *accord Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001).

To assert a claim of fraud by omission, the plaintiff must establish, as a threshold matter, that the defendant had a duty to disclose the omitted information. *See Bradford*, 48 S.W.3d at 755 ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."). "It is well settled that not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam) (internal quotations omitted). Plaintiff does not allege any fact in support of a fiduciary relationship between Plaintiff and Defendants beyond FINRA's duty as an institution. But "[m]ere subjective trust, without more, does not indicate that the person places confidence in another in the sense demanded by a fiduciary relationship . . . ." *Manon v. Solis*, 142 S.W.3d 380, 390 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *see also Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 60–61 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining a general fiduciary duty is not imposed when an agreement provided for "independent contractor" status (citing *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702–03 (Tex. 2007))). Accordingly, Plaintiff has failed to allege a confidential or fiduciary relationship between Defendants and Plaintiff to support a fraud by omission claim.

Even assuming there was a duty to disclose, Plaintiff's fraud by omission claim would still fail.[6] Plaintiff does not allege any fact that Defendants were aware that Plaintiff was ignorant of

---

[6] The Fifth Circuit has noted that Texas state courts and the Fifth Circuit have in the past mistakenly allowed for fraud by omission claims to proceed without the requirement of a confidential or fiduciary relationship. *See United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005) ("A reasonable jurist might well conclude, certainly after *Bradford*, [48 S.W. 3d 749] that a duty to disclose exists in Texas only in the context of a confidential or fiduciary relationship. . . . [I]t would be fair to say that courts after *Bradford* (including this court) have not gotten the message, but have instead continued to find that a duty to disclose can exist in Texas absent a confidential or fiduciary relationship.") (collecting cases). However, the Fifth Circuit in an unpublished opinion explained that *United Teacher Associates Insurance Co.*, clarified the confidential/fiduciary relationship element was required to plead fraud by omission. *See Smith v. BCE Inc.*, 225 F. App'x 212, 217–18 (5th Cir. 2007) (per curiam) (citing *United Tchr. Assocs. Ins. Co.*, 414 F.3d at 567). Accordingly, in line with the Texas Supreme Court and the Fifth Circuit's clarification, fraud by omission claims require the context of a confidential or fiduciary relationship.

any alleged safety and efficacy concerns or that Plaintiff did not have an "equal opportunity" to discover them. To the contrary, Plaintiff alleges he was aware of alleged safety and efficacy concerns regarding the COVID-19 vaccine and this, in turn, prompted him to draft his disclosure to the arbitration participants. *See* Dkt. 27 at 4. Plaintiff also does not allege any facts that Defendants intended to induce Plaintiff to get the COVID vaccine; he simply asserts this is true, *see* Dkt. 27 at 16, and therefore does not meet the Rule 9(b) pleading standard. *See Sealed Appellant I v. Sealed Appellee I*, 156 F. App'x 630, 633 (5th Cir. 2005) ("The complaint includes no more than the conclusory assertions of [the appellee's] knowledge and intent [to commit fraud]."). Moreover, Plaintiff does not point to any facts showing that he "suffer[ed] injury as a result of acting without knowledge of the undisclosed fact." *Daugherty v. Jacobs*, 187 S.W.3d 607, 618 n.3 (Tex. App.—2006, no pet.) (citing *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dall.*, 516 S.W.2d 138, 142 (Tex.1974)). In the case at hand, Plaintiff argues that the "undisclosed fact" is the alleged safety and efficacy concerns of the COVID-19 vaccine. *See* Dkt. 27 at 16. However, as explained above, Plaintiff alleges he was aware of the alleged concerns with the COVID-19 vaccine, and his allegations relate to an alleged injury stemming *from his removal* of the arbitrations—not any alleged omission of material facts.

Therefore, the Court finds Plaintiff has failed to plead his fraud by omission claim.

*2. Negligent Misrepresentation*

The elements of a negligent misrepresentation claim under Texas law are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying

on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Rule 9(b)'s pleading standards also apply to Plaintiff's negligent misrepresentation claim. *See Cypress/Spanish Ft. I, L.P. v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 707 (N.D. Tex. 2011) ("When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies." (citing *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387 n.3)); *Hoffman*, 23 F. Supp. 3d at 747 ("Moreover, because they are based on almost exactly the same factual averments, Plaintiffs' fraud and negligent misrepresentations claims are so intertwined that it would be impossible to remove the inadequate fraud averments while preserving a viable negligent misrepresentation claim.").

Here, Plaintiff's claims fail as his negligent misrepresentation claim does not satisfy the "what" prong of the Rule 9(b) analysis. Plaintiff's negligent misrepresentation claim is based on Defendant's alleged omission of the alleged safety and efficacy concerns. *See* Dkt. 27 at 21. Critically, Plaintiff does not allege *any damage* from justifiable reliance on the alleged misrepresentation regarding the alleged concerns about vaccine safety and efficacy. Plaintiff does not allege he was, in fact, induced to receive the COVID-19 vaccine or suffered any injury as a result. *See Lakiesha v. Bank of N.Y. Mellon*, No. 3:15-cv-901, 2015 WL 5934439, at *6 (N.D. Tex. Oct. 9, 2015) (granting motion to dismiss as the plaintiff's statement that the "purpose of the misrepresentations was to 'initate[e] the securitization process' . . . is unavailing because it reveals no reliance on the supposed misrepresentation by [the plaintiff] herself"); *Howard v. Chris-Craft Corp.*, 562 F. Supp. 932, 938 (E.D. Tex. 1982) ("Accordingly, even if plaintiffs' statements were false—which is, of course, not proven,—and even if they were intentionally false—*a fortiori*, not proven,—defendants could still not have been defrauded by plaintiffs as a matter of law, since they never believed plaintiffs' representations."). As such, Plaintiff's allegations show he did not rely

on any alleged misrepresentation and, thus, he cannot plausibly plead a negligent misrepresentation claim against Defendants.

Therefore, Plaintiff's negligent misrepresentation claim must be dismissed.

### D.  Common Law, Federal, and Constitutional Claims

In the Amended Complaint (Dkt. 27), Plaintiff alleges a violation of his informed consent rights, the Food, Drug, and Cosmetics Act, and his Fifth Amendment Due Process rights. *See id.* at 29–44. Defendants argue Plaintiff fails to state a claim because informed consent is not applicable to the present case, the Food, Drug, and Cosmetics Act does not provide a private cause of action, Defendants are not federal entities, and there is not an implied right of action for Fifth Amendment Due process under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Dkt. 32 at 33–37; Dkt. 35 at 14–15. Plaintiff responds that he has an implied right of private action under the Food, Drug, and Cosmetics Act due to the alleged failure on the part of federal agencies to enforce this law, and Defendants were in concert with federal actors. *See* Dkt. 34 at 33–38; Dkt. 37 at 13–14. For the following reasons, Plaintiff fails to state a claim under these theories.

### 1.  *Informed Consent under Texas Common Law*

Plaintiff's claim as to informed consent under state common law must fail. The common law "imposes on '[p]hysicians and surgeons [the] duty to make a reasonable disclosure to a patient of risks that are incident to medical diagnosis and treatment.'" *Felton v. Lovett*, 388 S.W.3d 656, 661 (Tex. 2012) (quoting *Wilson v. Scott*, 412 S.W.2d 299, 301 (Tex. 1967)). The Texas Supreme Court makes clear this is a duty imposed on "health care provider[s]" in deciding whether to undergo treatment—by Plaintiff's own allegations, Defendants were not healthcare providers, nor does Plaintiff allege that he has, in fact, proceeded with vaccination or any COVID-19 related

treatment in relation to FINRA's In-Person Hearing Policy. *See Schaub v. Sanchez*, 229 S.W.3d 322, 322–23 (Tex. 2007) (per curiam) (discussing common law and statutory duties under Texas law for *physicians and healthcare providers*). Vaccination was a requirement for in-person hearings—not a treatment offered by Defendants. Furthermore, Plaintiff's speculation that Defendants were cooperating with federal agencies to conduct an experimental trial are insufficient to assert that Defendants were acting as healthcare providers. *See Iqbal*, 556 U.S. at 678 (holding "mere conclusory statements" do not suffice). Finally, Plaintiff's cited cases, *see* Dkt. 27 at 31, are not relevant to the factual allegations of the present case and only emphasize that Defendants are not liable for Plaintiff's allegations for informed consent claims under Texas common law. *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 281–83 (1990) (affirming the Supreme Court of Missouri's judgment that clear and convincing evidence must be shown where a guardian seeks to discontinue nutrition and hydration of a person diagnosed to be in a persistent vegetive state); *Washington v. Glucksberg*, 521 U.S. 702, 735–36 (1997) (holding Washington law that prohibited physician-assisted suicide does not violate the Fourteenth Amendment); *Canterbury v. Spence*, 464 F.2d 772, 793–94 (D.C. Cir. 1972) (discussing the duty-to-disclose and informed consent regarding liability of surgeon who conducted a laminectomy).

As such, Plaintiff cannot allege an informed consent claim under Texas common law.

2. *Food, Drug, and Cosmetics Act*

Similarly, Plaintiff fails to state a claim under the Food, Drug, and Cosmetics Act. *See* Dkt. 27 at 32–33. 21 U.S.C. § 360bbb-3 sets forth statutory authorization and limitations on the Secretary of Health for the use of medical products in emergencies. Regardless of Plaintiff's dissatisfaction with federal agencies' perceived lack of enforcement of federal law, Plaintiff is

simply not provided a private cause of action under 21 U.S.C. § 360bbb-3.[7] *See Bridges v. Hous.*

*Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021), *aff'd sub nom. Bridges v. Methodist*

*Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) ("[The plaintiff] has

misconstrued this provision. It confers certain powers and responsibilities to the Secretary of

Health and Human Services in an emergency. It neither expands nor restricts the responsibilities

of private employers; in fact, it does not apply at all to private employers like the hospital in this

case. It does not confer a private opportunity to sue the government, employer, or worker. [The

plaintiff's] claim that the injection requirement violates 21 U.S.C. § 360bbb-3 fails."); *accord*

*Smith v. Terminix Pest Control, Inc.*, No. CV 22-3701, 2023 WL 3569127, at *2 n.23 (E.D. La.

May 19, 2023); *see also Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 292–

93 (E.D.N.Y. 2021), *appeal withdrawn*, No. 21-2759, 2022 WL 1316221 (2d Cir. Mar. 17, 2022)

("Section 564 of the Food, Drug, and Cosmetics Act does not include a private right of action . . .

---

[7] Plaintiff also cites to 21 C.F.R. § 50.20 in support of a private cause of action to enforce his informed consent rights.
21 C.F.R. § 50.20 is an agency rule that provides the following:

> Except as provided in §§ 50.23 and 50.24, no investigator may involve a human being as a subject
> in research covered by these regulations unless the investigator has obtained the legally effective
> informed consent of the subject or the subject's legally authorized representative. An investigator
> shall seek such consent only under circumstances that provide the prospective subject or the
> representative sufficient opportunity to consider whether or not to participate and that minimize the
> possibility of coercion or undue influence. The information that is given to the subject or the
> representative shall be in language understandable to the subject or the representative. No informed
> consent, whether oral or written, may include any exculpatory language through which the subject
> or the representative is made to waive or appear to waive any of the subject's legal rights, or releases
> or appears to release the investigator, the sponsor, the institution, or its agents from liability for
> negligence.

21 C.F.R. § 50.20. As explained by multiple courts, "21 C.F.R. § 50.20 does not create a private right of action . . . ."
*Mongielo v. Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *12 (W.D.N.Y. Mar. 1, 2023) (citing 21 C.F.R §
50.1)); *DeJean v. Kelly*, No. 8:22-CV-0461-KKM-TGW, 2022 WL 3345329, at *2 (M.D. Fla. Aug. 12, 2022), *appeal
dismissed*, No. 22-13048-JJ, 2022 WL 17568522 (11th Cir. Nov. 3, 2022) ("[The plaintiff's] other two claims for
payment . . . and for a violation of 21 C.F.R. § 50.20 likewise fail because they are not recognizable claims."); *Garfield
v. Middle Tenn. State Univ.*, No. 3:21-CV-00613, 2021 WL 5770877, at *3 (M.D. Tenn. Dec. 6, 2021) ("The regulation
cited by Plaintiff, 21 C.F.R. § 50.20, explains the general requirements for informed consent by human test subjects
in clinical trials. The Sixth Circuit has said that 'federal regulations cannot themselves create a cause of action,' finding
that 'that is a function of the legislature.'" (quoting *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir.
1993))). Because 21 C.F.R. § 50.20 regulates the U.S. Food and Drug Administration and agency rules standing alone
cannot create implied causes of action, Plaintiff cannot state a claim under 21 C.F.R. § 50.20.

. Citing the Nuremberg Code, plaintiff argues that the Mask Mandate violates the international norm that one cannot be coerced into medical experimentation without consent . . . Recasting it as an unlawful human experiment is an irrational leap of logic.").

Accordingly, Plaintiff cannot plausibly allege a claim under the Food, Drug, and Cosmetics Act.

### 3.   Fifth Amendment Due Process and Bivens

Finally, Plaintiff cannot state a claim for an implied right of action against Defendants under the Fifth Amendment. Plaintiff argues the Court should find an implied right of private action under the Fifth Amendment's Due Process Clause "in light of recently revealed Federal schemes designed to crush individual civil rights" and because FINRA is working as a proxy federal agency. Dkt. 34 at 36; Dkt. 37 at 13–14.

"*Bivens* recognized an implied cause of action against federal employees for unreasonable searches and seizures in violation of the Fourth Amendment" and, "[t]hereafter, the Supreme Court extended *Bivens* in only two more cases: *Davis v. Passman*, 442 U.S. 228, 248–49, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (gender discrimination in violation of the Fifth Amendment) and *Carlson v. Green*, 446 U.S. 14, 16–18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (failure to treat a prisoner's medical condition in violation of the Eighth Amendment)." *Butler v. Porter*, 999 F.3d 287, 293 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 766, 211 L. Ed. 2d 480 (2022), *reh'g denied*, 142 S. Ct. 1224, 212 L. Ed. 2d 231 (2022) (citation omitted). The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (citing *Iqbal*, 556 U.S. at 675). "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (citing *FDIC v. Meyer*, 510

U.S. 471, 484 n.9 (1994)). "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way.*'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Cantú*, 933 F.3d at 422).

The Fifth Amendment Due Process clause relates solely to actions taken by the federal government.[8] *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case." (citing *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995))). As Defendants argue, neither FINRA nor Cook are federal entities or employees. *See In re Hardwick*, 648 B.R. 175, 183 (Bankr. E.D. Tex. 2023) ("Despite [the plaintiff's] contentions, case law makes it clear that FINRA is not a federal administrative body but is instead a self-regulatory organization distinct from a normal administrative agency.") (collecting cases); *McGinn, Smith & Co., Inc. v. FINRA*, 786 F. Supp. 2d 139, 147 (D.D.C. 2011) ("Courts have repeatedly held that FINRA is a private entity and not a government functionary."); *D.L. Cromwell Invs., Inc. v. NASD Reguls., Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) (holding that FINRA's precursor was not a government agency but a private actor). Plaintiff's allegations that FINRA worked in concert with federal agencies are purely speculative and insufficient to state a claim. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the *speculative* level.").

Accordingly, Plaintiff fails to state a claim under the Fifth Amendment Due Process Clause against Defendants.

---

[8] Because Plaintiff cannot plausibly allege Defendants are employed by the federal government or that Defendants were working in concert with the federal government, the Court does not reach the issue of whether a *Bivens* remedy exists in this new context. Moreover, Plaintiff's citation to *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021) is inapposite—*BST Holdings* discusses the statutory and rulemaking authority of federal agencies and not whether certain entities are private actors or what actions private actors may take in relation to COVID-19.

### E.  Leave to Amend

On a motion to dismiss for failure to state a claim, a "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Further, a *pro se* litigant should generally be offered an opportunity to amend his or her complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 4:20-cv-948, 2021 WL 2232052, *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

In the present case, the Court finds Plaintiff has pleaded his best case for his causes of action, and amendment would be futile. Plaintiff was provided leave to file the Amended Complaint (Dkt. 27) to exceed page limits, and the parties were provided an extended briefing schedule to address the sufficiency of the Amended Complaint (Dkt. 27). *See* Dkts. 24, 29. While Plaintiff has vigorously asserted his claims, Plaintiff's allegations reveal a misunderstanding of his business relationship with FINRA and FINRA's arbitration participants; his allegations do not support defamation, fraud, or misrepresentation; and he cannot assert the Texas common law, federal, and constitutional claims against Defendants. Moreover, Plaintiff's responses do not reveal a viable cause of action. Accordingly, the Court finds leave to amend would be futile.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends the Amended Motion to Dismiss (Dkt. 32) be **GRANTED,** and Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 22nd day of August, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

31